Here ye, here ye, this honorable appellate court of the 2nd Judicial District is now in session. Honorable Anne B. Ferguson, Governor. Please be seated. Your Honor, the first case in the docket this morning is 2-22-0182, in the case of the State of Illinois Plaintiff Appellee Justin A. Cavazos, defendant appellate. Arguing on behalf of the appellant, Mr. Christopher McCoy. Arguing on behalf of the appellee, Ms. Katrina M. Coon. Alright, are you both ready to proceed? Yes, Your Honor. Counsel, then, when you're ready. May it please the court. Counsel. My name is Christopher McCoy from the Office of the State Appellate Defender, and I represent Mr. Justin Cavazos. In my 13 years practicing at OSAD, I have never seen a case where there is more mitigating evidence than this one. And I would venture to guess that this court has seen few that are our, it's equal. Counsel, I would agree with you from the get-go. That what he has done in the Department of Corrections is certainly exemplary. And I think I can speak for my panel. We have read the record. We're very well aware of it. You may want to proceed with that in mind. Yes. And as Your Honor has mentioned, it is what Justin has done in the Department of Corrections shows that he is the textbook example of what we want from juvenile defendants. He is Miller personified. And with that in mind, there are two issues we've raised on appeal. Well, Mr. McCoy, there are a couple of things that the trial court did point out in the defendant's life, you know, the gang association, which is still a relevant aggravating factor, would you agree, even though it's a juvenile? I would say it's relevant. It has diminished weight in this case. But the defendant's personal experience being shot himself at the age of seven, losing his uncle. So, and except for the firearm add-on for the attempt, first-degree murder, the defendant got the minimum sentence. That's correct. But it's 15 years over what? Right. And that's obviously, that's discretionary with the trial court under the new provisions, correct? Correct. Where's the abuse of discretion? The abuse of discretion here, well, let me take one step back. Okay. So there are two issues here. The first issue is concerned with the process of the sentencing hearing. And it's not just the end results, the number of years that this court has to look at. Obviously, in Argument 2, we are arguing an excessive sentence, that the number of years was excessive. But it's also the process that the trial court took to get there. And that's our Argument 1, is that Justin was denied a fair sentencing hearing. And there are several things that happened in this case that showed that Justin was denied this fair sentencing hearing. But to get back to Your Honor's question, we know there was an abuse of discretion because Judge Tiegler did not, he fundamentally misunderstood the principles underlying Miller v. Aldebaran. He fundamentally misunderstood the way in which juveniles think, the way in which they behave, and he did not properly apply it to this case. And the fact that this sentence was basically two years less than the maximum non-de facto life sentence. That's the statutory construction, though. He got the minimum. The only thing we're here to talk about is the 15-year add-on. And so my question is, why is adding that on, given the statutory scheme, an abuse of discretion? It's an abuse of discretion because of all the mitigating evidence here. It's abuse of discretion because Justin has been rehabilitated. This is not just rehabilitative potential in this case. That's an issue that will be for the parole board at some point in time. And whether or not the defendant has been rehabilitated is a fact determination by a fact finder. And that would include the trial court or the parole board. We are not defining it as a fact. Do you understand what I'm saying? Absolutely. And the court, in your brief, you do not point to any specific factor in the new provision, Section 5-4.5. You don't list any specific mitigating factor that the court did not consider. It's just the overarching argument. I would disagree with that last point. We specifically point to A3, which I can read that. A3 under 5-4.5-105 is the person's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma. And that other childhood trauma in this case, not only was it not considered in mitigation, it was considered in aggravation. Because of the knowledge that the defendant would have had, his observations as a youth. Correct. But that is the opposite of what the trial court is supposed to be doing here. But isn't that like a mental health issue? A person can have a mental health issue that's raised at a sentencing hearing, and the Supreme Court has said that there's a double-edged sword. It can be an aggravator as well as a mitigator. Why isn't that factor? It can't be looked at in the same vein. I mean, if a child witnesses a horrible event and has that in his background, but despite that horrible event that he or she experiences, he then goes on to join the gang. Isn't that really what the trial court was talking about? Yes, that is a good summary of what the trial court was talking about. We had three responses. We've read the record. We know that. Just to answer your question about mental health. Mental health, in most cases, you don't grow out of it. That's something that's chronic. That's something a defendant is going to live with the rest of their life. Miller, what the scientific research at Miller tells us, is that defendants age out of that. And Justin shows that he has aged out of that. He's been in a maximum security prison. Well, he's been incarcerated for 13 years. Most of that time he's in a maximum security prison. While he's there, he's not getting in fights. He's not involved in gang activity. He's not even retaliating when he gets stabbed. What's he doing? Obviously, this court knows. He's getting a college education. He has a job. He's bettering himself. So we see that he has aged out of this gang involvement. I understand what you're saying. But this, you agree, his conduct. The trial court has to take into consideration the nature of the offense. It's one of the primary factors in sentencing. Correct. Even with a young child. Correct. A young person. This is a horrible crime. He possessed. He showed off the weapon. He handed it out for the purpose of slaying other human beings. It is undoubtedly a serious offense. That does not mean that a sentence cannot be excessive. Look at people v. McKinley. People v. Hill. People v. Bruce. All very serious crimes. All cases in which the trial judge abused its discretion in imposing a sentence. Imposing an add-on? Did any of those cases involve an add-on? I don't know offhand. I know they did, but I'll take a look. The point is, the add-on or not, it's one single sentence. And that's what this court has previously held. It's one sentence. The only thing the court had discretion over here was to add 15 or not. The statute doesn't allow the court to say, I'm going to do an add-on for 5 or 8 or 10. So it's nothing or 15. Correct. But the court could have imposed a 10-year sentence without an add-on. It could have imposed a 12-year sentence without an add-on. It could have imposed a 20-year sentence without an add-on. Well, how would the court do that and impose a sentence higher than what had previously been imposed on the murder and then on the attempt? Well, again, it's one single sentence. His previous sentence on attempt murder was 25 years. So that's the absolute max the court could go on 25. Right. So 6 to 25 is what the judge was looking at. He could have imposed a 12-year sentence with zero add-on on the attempt murder. And that would still be a lesser sentence than Justin got the first time. So that would be permissible. So, yes, it's the add-on, but it is 6 to 25. So you think the court has used its discretion, then, in imposing the minimum sentences? But what we're arguing is the abuse of discretion was he's sentenced to 21 years. That's what he's doing on the attempt murder. That's what this court has held. And we didn't cite another brief since it came out after the briefs were filed. But this court recently addressed this issue of people being VAT and MUMEC. We cited the first opinion in that. This court subsequently came out with another opinion after resentencing. But this court has said you look at the number overall. You don't separate it to minimum sentence at all. It's one sentence. Justin's doing 21 years. That was an abuse of discretion here. And we're not running away from that high burden. We acknowledge most cases, most sentences should not be reduced by this appellate court. Most cases, the trial court has discretion, and that should be respected. But this is a very, very unique case. This is a case where the tremendous extensive amount of litigation evidence does not speak to a sentence that is four years less than the minimum sentence Judge Chigler could have given on attempt murder. When you factor in everything, when you factor in where the defendant came from, where he is now, the work it took to get him there, the fact that defendants who received their college degree while in prison have only a 5% recidivism rate. So we're looking at a 95% chance Justin does not re-offend. And given what we know about him, it's probably even a better chance than that because that unrebutted expert testimony is that Justin is well-positioned to make a successful transition to society. And because of that, this is an abuse of discretion. Opposing counsel has tried to paint this as being in the lower quadrant of sentences, but as the scores point out, 6 to 25 is where it could have went on the attempt murder. And that is certainly, 21 is in the higher range of that. But, Your Honor, as I said before, it's not just the end number that we need to look at. We need to look at the process Judge Chigler took to get here. We've outlined multiple mistakes that have been made in our briefs, and I welcome any questions on those. Could you argue or discuss what you perceive to be an improper consideration of the victim impact evidence? Yeah, so it's undisputed that a victim's status cannot be considered in sentencing unless it goes to the seriousness of the crime. Whether or not Oscar played soccer does not affect the seriousness of the crime. And the fact that Judge Chigler sort of, through this personal connection to it, just further exacerbated the impropriety of considering that. And how do we know from the record whether or not the trial court was making those comments because the victim's family was in open court? I mean, obviously we can't read the judge's mind. Exactly. I was a prosecutor for 30 years. I saw several judges over the years essentially pander to the victim's family, but really played no role in the sentence. In this case, the judge is cherry-picking something out that neither party brought up in its argument. And he's not only addressing the victim, but he's making this personal connection. And it shouldn't matter – when you're a defendant, it shouldn't matter what sport the trial judge played when he was in college or high school. Even if we acknowledge its error, where's the prejudice? Well, the prejudice is, was this an insignificant factor in the sentence? And it cannot be said that it was because, again, this is basically sua sponte being brought up by Judge Chigler. And he's spending a great deal of time on it. Did the state argue victim impact? They did not specifically argue the soccer-playing aspect of it. But that was in the victim impact statement. Yeah, and we're not arguing the victim impact statement isn't admissible. But not everything in the victim impact statement is a permissible consideration. One other aspect I would like to highlight here is the judge misunderstanding – Judge Chigler fundamentally misunderstanding Miller. Specifically, he kind of pays lip service to some of these Miller principles, but then immediately dismisses them, saying, Justin knew exactly what a gun was. He knew what a gun could do. That's not enough. In fact, in People v. McKinley, the appellate court made this exact point. The trial judge there said that the gun made the defendant older. But the appellate court said, no, that's improper. The fact that the defendant had a gun does not cancel out the characteristics that define him as a juvenile. In fact, it lends support to the fact that the defendant lacked maturity. He was reckless, that he took too many risks. And so the same thing applies in Justin's case. Judge Chigler is flipping the Miller principles on their head. This thing that shows immaturity, he's saying, shows maturity. It's the same thing, as I discussed, with the characteristics of Justin's childhood trauma. The fact that he had been shot at seven years old while he was playing at a playground. The fact that his uncle was murdered. Those do not make the crime more serious. And the final point on Argument 1 that I would like to touch on is the judge did not apply two pertinent statutory mitigating factors, A8 and A9. That the defendant's criminal conduct was the result of circumstances unlikely to occur. And that the character and attitude of the defendant indicate he's unlikely to commit another crime. Both of these should have applied here for all the reasons we've talked about. The expert testimony, the low recidivism rate. So both of those should have been considered by the trial judge. But if you'd like to make a closing remark and complete your thought, please do so. Again, what we've seen from Justin is someone who's matured. Someone who we can trust to be let back out in society. Someone who taxpayers should not be paying to incarcerate for decades. And again, both because the process that got to the sentence was improper and the end result was proper. Justin would respectfully ask this court to either remain his sentence for resentencing or reduce his sentence outright. Thank you. Thank you. Oh, I'm sorry. Counsel, when you're ready. Good morning, Your Honors. Katrina Kuhn for the people of the State of Illinois. May it please the Court. Defendant is not entitled to a third sentencing hearing. He did not receive a de facto life sentence. And both the sentence and the record reflect Judge Taylor's consideration of his juvenile status. As this Court has noted, the defendant received the lowest possible terms for murder and attempted murder. And the trial court- Let me ask this because the critical issue in this case is whether or not the trial court abused its discretion in imposing the firearm add-on for the attempted murder. The General Assembly, when they passed this law, made clear that they intended the trial courts to exercise their discretion in whether or not to increase the penalty with the mandatory add-on. And the reason for that is far too many young people, teenagers, were being sentenced to extraordinary long sentences. Can you argue why was it not an abuse of discretion to impose the firearm add-on for the attempted murder where the record shows extraordinary mitigation? Where you have somebody who's stabbed in prison and still refuses to go the gang route. He's learned his lesson. He is no longer a gangbanger. He's improved his quality of life. If there's a case where there's an abuse of discretion, why isn't this the case? Well, and Judge Taylor did acknowledge the mitigating evidence, the progress that defendants made. He called defendant a model prisoner. He praised defendant repeatedly. And to your point about the firearm enhancement, you mentioned that in some cases, juvenile defendants are receiving very long sentences. This was not that case. This defendant received the minimum sentences. He did receive the enhancement. The purpose of the enhancement, and I note that Justice Jorgensen noted on the direct appeal that she was troubled by the fact that it was mandatory. It is now discretionary. It was appropriately applied here. Judge Taylor applied it to the attempted murder portion of the sentence, meaning it would be, and not the murder portion of the sentence, meaning it would be served at a lower percentage. And in addressing the legislature's concern, it did not remove the enhancement entirely. Gun crimes are to be punished more severely. That was the legislature's determination. However, it did put the discretion in the seat of the trial court. Gay evidence was at the heart of this crime. It was a weapons offense. Defendant had a previous weapons offense. The trial court could weigh all of that in deciding that it was appropriate here. Your Honors, I've read the record. I will not belabor the record and the facts of this. I will simply point out that 15-year-old Oscar Rodriguez and 15-year-old Claudia Lozano were walking down the street, and defendant had been hunting. He had been throwing gang signs. He stated that he was a victim. Natalie, you're on the victim. What about the court's comments about the victim's status, the soccer, placing himself in the shoes of the victim, essentially, by identifying with him as a fellow soccer player? What do you have to say about those? Your Honor, I would say that I would ask that the court look at Judge Tegeler's remarks in their entirety and not focus on isolated comments. The record does show that he attempted to discuss a personal fact about the victim. The trial court did not indicate in any way that he relied on the personal traits of the victim or the victim's status. He didn't even seem to talk about his status to increase the sentence. Seven new judges and trial judges are in a difficult position because if they say too much, they could be criticized. If they say too little, they could be criticized. It's possible that, again, as Justice Burkett pointed out, Judge Tegeler simply wanted to acknowledge that there was family in the courtroom, but it did not. Judge Tegeler in no way indicated it was factoring the sentence or that he was increasing the sentence or that it had any weight. Again, the court was presumed to consider mitigating evidence, and it did consider mitigating evidence here because the sentences were the minimum. Counsel, what about the argument from the defense that A8 and 9 were not considered? What's in the record to indicate otherwise? I would argue that, again, the court is not required to expressly lend weight to every factor or expressly state it has considered a factor. If the evidence was presented to the court, it's presumed to have considered it. And, again, evidence and mitigation does not require that the lowest possible sentence be given. As to those particular factors, I would argue that the court did consider them, that the court dictated a minimum sentence. And, again, the court is not required to give more weight to the defendant's rehabilitative potential than to the seriousness of the offense. The seriousness of the offense, whether it's an adult or a juvenile, is to be given great weight. And, again, this defendant handed a gun to an occupant of the car who handed it back to him. Defendant then made the choice to hand the gun to his brother. Mr. Hernandez, who handed the gun back to defendant, made a choice. Defendant could have also made a choice. Defendant was then bragging about this later, bragging about the shooting. And I would like to note a couple of the cases that defendant is relying on are distinguishable. I've noted them in my brief, but I'll briefly point out. McKinley, the defendant was, the trial court clearly had a problem with Miller and Buffer and McKinley. McKinley, the defendant, was resentenced in the resentencing to a 39-year term, and the trial court stated there would be no possibility of parole. Again, the defendant said that the court said the defendant was 16 years old and the gun made him older. The judge also said the defendant should get more than 40 years, but, yeah, I will give him 39. The judge was persistent in refusing to follow Miller and Buffer and McKinley, and he made no consideration as to the defendant's youth. Just briefly, also, in Bruce, the court rejected an agreed sentence and imposed a longer term despite mitigating circumstances here. In Bruce, there was evidence that the defendant had reduced mental capacity and had a minimal role in the crime. That is not the case here. In Hill, the sentencing court did not recognize expert testimony. Here, Judge Tegeler expressly noted its consideration of the expert testimony of Judge Garbarino's, I'm sorry, Dr. Garbarino's report, reports on adolescence, all of defendant's participation, all of the progress that defendant has made. The judge noted that defendant had a tough area to grow up in, but that he still knew right from wrong. And for those reasons, we believe that the 15-year enhancement was appropriately added by the trial court. Counsel, what about the argument from the defense also as to the defendant essentially was a victim, had been shot himself, that the argument being that this factor is being turned on its head and used against him when it really should be a factor in mitigation? Well, the juvenile statute sets out, you know, all the factors. It codifies, you know, the findings of the spirit of Miller. And the factor of family environment, childhood trauma, neglect or abuse is a factor. The court did note that defendant had been shot. The court also noted that, you know, you would think that that would make him not want to shoot other people. You know, it was one of those things that could, you know, was weighed on both sides. The court expressly noted that factor. The court expressly noted potential for rehabilitation and his expression for remorse here, which he did not offer before. And the court noted that there was maybe some impetuosity to defendant's action. But overall, the court could look at all the other circumstances in the juvenile sentencing statute, such as the degree of participation, the role in planning. This was not a spur-of-the-moment offense in his prior criminal history. And the court could and probably did use all of those in fashioning a sentence. As your members have suggested this morning, and people argue that defendant's relief lies in the parole statute, the parole statute gives defendant a meaningful opportunity for release before he has served the de facto life sentence. Defendant is, you know, by the estimations here this morning, you know, five years or so away from his first parole hearing. And that means that he could be free while still in his 30s. He would have plenty of time to have a second start, put to work, put to use all of the work he's been doing in prison. But the fact that the juvenile sentencing statute and the parole sentencing statute do not erase the fact that defendant needs to serve a punishment for his offense. And so you're honest that the state would argue that that is defendant's relief here. Are there any other questions? I do have a question, kind of to go back to your prior point when you would discuss McKinley, Bruce, and Hill. What about Royer, where the court did basically take what should have been a mitigating factor and treat it as aggravation? Well, in Royer, the defendant, I believe, had been abused. There was no evidence that he was in a gang. I do distinguish that case in my brief on page 14. And the home environment was considered an aggravation. In Royer, I believe the defendant received a de facto life sentence, which was not the case here. But I think counsel was arguing the process by taking something that the statute would categorize as mitigation, and then using it, at least in the judge's mind, in the evaluation of all the factors, to aggravate the sentence. In this situation, obviously, any aggravation is the add-on, because he got the minimums. Yes, Your Honor. But the court has the discretion to do that. The court is required to look at all the factors that there's no indication that the court considered an improper factor. I don't believe that the fact that he noted that defendant had been shot in the past outweighed the fact that he had irrefutably shot someone himself. I don't believe that that shows that he was not giving weight to defendant's family environment. Again, the court noted that defendant grew up in a tough area. However, he still knew right from wrong. Something that you haven't really argued and the defendant hasn't argued, the firearm add-on, and the court comment that it's intended for deterrence, has that worked out in the state of Illinois? Where's the deterrence? Gun violence is at an epidemic proportion. It's not working. Gun violence certainly prevails. That may be a question for the legislature. The people do agree that this takes a while to get through to the system. I'm not making an observation about society as a whole, not what's going on right now in the criminal justice system. But should that be something the court should consider when he's saying this is for deterrence when it's really not working? Well, is Your Honor's question whether the firearm enhancement should be? What I'm talking about is exercising his discretion in imposing the firearm add-on as a deterrent. Who's it deterring? Well, it's deterring this defendant and it's also deterring society. Defendant, well, it deterred him by putting him in prison, which is appropriate. But there's also the concept of general deterrence and the court said that the message has to get out to people who are 10 and people who are 30 and people who are 40 that gun violence will not be tolerated. Now, whether that has been effective in Illinois could be a combination of many factors, as Your Honor's aware. Again, these things take time to see the effect of. However, there's no indication that the trial court considered anything improper in applying the enhancement. Again, it was appropriately applied here in a serious gun crime where defendant also had, at the age of 16, also had a previous weapons offense. And it could certainly be considered by the trial court. If there are no other questions, I may answer for Your Honor's. Thank you, counsel, for your argument. Thank you, Your Honor. The people ask that the judgment of the trial court be affirmed. Thank you. Counsel? Counsel referred to Justin's childhood trauma as a double-edged sword. That is not the case here. First of all, it contradicts the statute, which explicitly says childhood trauma must be considered a mitigation. Well, wait a minute. The statute calls it childhood trauma. Can the same act that might be childhood trauma also be aggravation? Perhaps in some case, but it's certainly not here. Because if you take Judge Tegeler's rationale and sort of extrapolate on it, what it would mean is, hypothetically, if Justin had been born into a middle-class home, if he lived in a safe neighborhood where he could go to the playground without being shot at, if his relatives hadn't been murdered, the crime would be less serious. That just doesn't make sense. If anything, that hypothetical defendant, that crime would be more serious. Because he'd have every advantage not to get involved with gangs, not to get involved with crime. And Miller talks about this. It says juveniles can't extract themselves from these horrible social situations that they're born into. So in this case, with these specific childhood traumas, it is not a double-edged sword. It is mitigation. It is mitigating evidence. And it shows exactly what Miller was talking about. Counsel also referred a little bit to answering Justice Burkett's questions about deterrence. It must be kept in mind that basically every reviewing court that has looked at deterrence post-Miller has acknowledged that it is very, it has a very low value when you're dealing with defendants. People v. Hill talked about the fact that it would not deter anyone from committing this sentence. And the way in which Judge Tiegler used it here, saying the message has to get across, that their lives are going to be over when you're 30. When you're 16 years old, 30 is so inconceivably far away, there's no juvenile that's thinking about it. You might as well be thinking about what life's going to be like when you're 130. It doesn't do, deterrence just doesn't hold any weight in this case. And that is part of why Judge Tiegler abused his discretion, because the rationale, the process, the way he got to the sentence. And what should the court consider? The court should consider the factors listed in the Miller statute. Is that considered deterrence at all? Our argument was, whether or not there's any, we're saying deterrence should be a consideration. Even if it is, given the facts of this case. How would deterrence fit into the facts of this case, then? It doesn't. Our argument is, it does not. There could be some circumstances where it would, but given what happened in this case, given how the facts led up to Justin being in this position to start with, even if it could be considered, it has so little value, it doesn't serve the goal of giving him a heightened sentence, of going 15 years above the minimum. And again, the abuse of discretion is seen here, because through all these faulty processes, Judge Tiegler fundamentally misunderstands Miller. How do we conclude that he absolutely does not understand Miller, and yet he gives him the minimum sentences? Because of his own words. Look at what Judge Tiegler said. That's what we have to go on, is the record. He says, what else could he have done? He gave him the minimum murder, he gave him 15 years over on that temper. That's a decade and a half extra in prison that Justin's going to serve. But that's still time in prison. He'll still be a relatively young man in his 30s. And counsel, that sentence went from originally 10 to 6, right? Again, I think that's not the accurate way to look at the sentence. That is the fact. We may have disagreed if we were in the sentencing hearing ourselves, but when we were dealing for abuse of discretion, we're looking at what the court considered. Here's not the evidence before us that you've got a minimum of 20 on the first-degree murder. The enhancement is not applied to the first degree, so it's not 100 percent on that. It's 85 because it's applied to the attempt. And then on the attempt, the 10 went down to 6. And then the stolen motor vehicle was essentially not a factor whatsoever. So given the fact that these sentences all went down, is that not prima facie evidence for us that mitigating factors were considered? Mitigating evidence may have been considered, but again, the evidence in this case changed drastically from the first sentencing hearing to the second sentencing hearing. I represented Justin on his direct appeal. I would not have got up here and told your court, this court, that this was the most mitigating evidence I'd ever seen at that OLL argument. It is today. Your personal experience is not of record. I understand that. You're a passionate lawyer, but don't refer to your experience as something that we should consider. Absolutely. And my point is not my opinion in this case. My point is, look at the record. At the first sentencing hearing, the state's words were, Justin has no rehabilitative potential. He has a slim chance of rehabilitative potential. That's what the state says at the first sentencing hearing. That has drastically changed. So of course the sentences are going to go down. I know my time has expired, but if I can make one last point. If you look at people v. McKinley, in that case the sentence went down from, I believe, 100 years to 39 years. Still, the appellate court found that that case was an abuse of discretion. Isn't that where the court specifically said in the record, I find mitigating factors to be irrelevant. I will not consider them. The trial court also said in McKinley the defendant's rehabilitation, he does have rehabilitative potential. There's no question about that. He also said the defendant's conduct in the penitentiary has been admirable. He hasn't gotten into trouble. He is recognized for some leadership traits within the Department of Corrections. The appellate court said that these brief general references to the defendant's rehabilitation indicated the trial court disregarded the extent of the defendant's rehabilitation and did not afford it adequate weight. That is the same thing that happened in this case. There were brief references, but look at the record. Every time the court makes a reference to rehabilitative potential, makes a reference to juvenile sentencing, he immediately follows it up with either comments about the victim, comments about the victim's family, or why this should just be swept under the rug. So the comments here did not give adequate weight to the extensive mitigating evidence in this case. Thank you. I want to thank both counsel for your exceptional arguments this morning. We will take it all under advisement and issue a written decision in due time, and we will be in recess until the next argument at 1030.